UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ANTHONY SPINA,

                      Plaintiff,

   -v-                                                       5:11-CV-1496

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                     OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
Attorneys for Plaintiff
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202

OFFICE OF REGIONAL GENERAL COUNSEL     SERGEI ADEN, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Plaintiff Anthony Spina ("Spina" or "plaintiff") brings this action pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the defendant Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income

("SSI"). Spina alleges that he has been unable to work since February 20, 2009, due to heart problems, a head injury, and a learning disability.

The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.[1]

## II. BACKGROUND

Spina filed an application for DIB and SSI on November 13, 2009, claiming a period of disability beginning on February 20, 2009. His claims were denied on April 23, 2010. Upon plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on April 19, 2011. The ALJ rendered a decision on June 1, 2011, denying his claim. Plaintiff appealed the ALJ's decision. On September 22, 2011, the Appeals Council declined further review of the ALJ's decision. Thus, the ALJ's decision became the final decision of the Commissioner.

Plaintiff filed this action on December 20, 2011. The parties' familiarity with the facts, as detailed in plaintiff's brief, is assumed. The facts will therefore only be developed as necessary in the analysis.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

---

[1] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

"Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. Id. Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

### B. Disability Determination—The Five Step Evaluation Process

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In

addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity he is not disabled, and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful employment, then Step Two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a severe impairment, then Step Three requires the ALJ to determine whether, based solely on medical evidence, the impairment meets an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, Step Four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden

of proof with regard to the first four steps is on the claimant.  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).  If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner at Step Five.  Id.  This step requires the Commissioner to examine whether the claimant can do any type of work.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant has the RFC to perform work in any of five categories of jobs:  very heavy, heavy, medium, light, and sedentary.  Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).  "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity."  Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

## C. Analysis

The ALJ found that Spina had not engaged in substantial gainful activity since February 20, 2009, the alleged onset date.  The ALJ further determined that Spina suffers from the severe impairment of neurocardiogenic syncope which restricts his ability to perform basic work activities, but which is not listed in or equivalent to an impairment listed in Appendix 1 of the regulations.  The ALJ then determined that he has an RFC that allows him to perform light work, "except [he] must avoid hazards, such as heights and moving machinery."  R. at 21.[2]  Finally, the ALJ determined that plaintiff has no past relevant work, and there are jobs that exist in significant numbers in the national economy that plaintiff can perform, except he must avoid hazards, such as heights and moving machinery.  The ALJ

---

[2] Citations to "R." refer to the Administrative Record.  ECF No. 9.

- 5 -

thus concluded that Spina is not disabled within the meaning of the Social Security Act, and is therefore not entitled to benefits. In reaching this conclusion, the ALJ afforded "some weight" to a portion of the opinion of plaintiff's treating physician, Dr. Moses Kyobe, and "no weight" to other portions of Dr. Kyobe's opinion. R. at 23–24.

Plaintiff argues that the ALJ failed to classify his migraines as a severe impairment. He also contends that the RFC and Step Five determinations are not supported by substantial evidence and that the ALJ failed to apply appropriate legal standards when assessing his credibility.

### 1. **Severity of Impairment**

Spina first alleges the ALJ erred in finding his migraine headaches were not severe because the objective evidence in the record supports a finding of a severe impairment; plaintiff's "passing out spells" are not a necessary component of his migraines; his complaints of migraines and migraine treatment were not considered; and the cumulative effect of his migraines in combination with his neurocardiogenic syncope were not considered. Defendant responds that the ALJ properly found that plaintiff's migraines were not severe under the regulations.

The claimant bears the burden of presenting evidence establishing severity at Step Two of the disability analysis. Briggs v. Astrue, No. 09–CV–1422, 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Bianchini, M.J.) (Report–Recommendation), adopted, 2011 WL 2669463 (N.D.N.Y. July 7, 2011) (Scullin, S.J.). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c); see also 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at Step Two if it does not significantly limit a claimant's ability to do basic work activities). The

regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). Thus, "severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis. "The mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, itself, sufficient to deem a condition severe." Charlton v. Comm'r of Soc. Sec., No. 7:12-CV-580, 2013 WL 2403844, at *2 (N.D.N.Y. May 31, 2013) (Sharpe, C.J.) (quotations omitted).

      The Second Circuit has held that Step Two should only be used to "screen out de minimis claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting SSR 85-28, 1985 WL 56856, at *3). Many times, when there are multiple impairments as there are here, and the ALJ finds some but not all to be severe, an error at Step Two is harmless because the ALJ continues with the analysis and does not deny the disability application based on the lack of a severe impairment alone. Tryon v. Astrue, No. 5:10–CV537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (D'Agostino, J.). This is particularly true because the regulations provide that the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient

severity.  20 C.F.R. §§ 404.1523, 416.923; Dixon, 54 F.3d at 1031.

As noted above, plaintiff contends that the ALJ improperly found his migraines to be a nonsevere impairment.  The ALJ specifically mentioned plaintiff's migraines in his discussion of severe impairments, along with plaintiff's neurocardiogenic syncope and learning disability. With respect to the migraines, the ALJ found that the evidence does not support the finding of a severe impairment because plaintiff's migraines do not significantly limit his ability to perform basic work activities.  There is no indication that any medical source in the record assessed limitations stemming from plaintiff's headaches.[3]  Dr. Kyobe did not mention plaintiff's migraines in either of the two functional assessments he completed, and the functional assessment completed by consultative examiner Dr. Kalyani Ganesh indicated the limitations poses by plaintiff's neurocardiogenic syncope, but none posed by his migraines. In the absence of any medical source opinion specifying limitations posed by plaintiff's migraines on his ability to perform basic work activities, the ALJ's finding that plaintiff's migraines are a nonsevere impairment is supported by substantial evidence.

Further, because the ALJ found that plaintiff had the severe impairment of neurocardiogenic syncope, he continued to consider plaintiff's disability under Steps Three through Five of the disability analysis.  Even if it had been error to find plaintiff's migraines to be a nonsevere impairment, the error would have been harmless.

Accordingly, the failure of the ALJ to find plaintiff's migraines to be a severe impairment is not a basis for remand.

---

[3] While plaintiff discusses his migraine treatment in depth, he does not discuss any limitations stemming from the migraines or the reasons why the ALJ should have concluded that the migraines significantly limited his ability to perform basic work activities.

- 8 -

## 2. RFC Determination

Spina next argues that the RFC determination is not supported by substantial evidence because: (1) the ALJ failed to properly apply the treating physician rule; (2) the ALJ failed to properly develop the record by obtaining an opinion of plaintiff's function-by-function limitations from Nurse Practitioner Lauren Zumpano; and (3) the ALJ failed to apply the appropriate legal standards in assessing plaintiff's credibility. The Commissioner maintains that the RFC determination is supported by substantial evidence, including the opinion of consultative examiner Dr. Ganesh.

### a. Treating Physician Rule

Plaintiff contends the ALJ failed to properly apply the treating physician rule when he afforded "no weight" to Dr. Kyobe's May 2, 2011 medical source statement. Spina further argues that the ALJ failed to consider the required factors in determining the amount of deference Dr. Kyobe's opinion was due. He alleges the ALJ did not consider Dr. Kyobe's opinion as a whole and instead considered a portion of it, and also failed to take into account Dr. Kyobe's assessment of plaintiff's exertional limitations which are supported by the record.

The "treating physician rule" provides that "an ALJ must give controlling weight to the treating physician's opinion when the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Weather v. Astrue, No. 11–CV–00890, 2012 WL 6725858, at *3 (N.D.N.Y Dec. 27, 2012) (Kahn, J.) (quoting 20 C.F.R. § 404.1527(d)(2)); see Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight. If a treating source's opinion is not given

controlling weight, an ALJ must apply the factors listed in 20 C.F.R. § 404.1527(c)(2)(i)&(ii), as well as the factors in § 404.1527(c)(3)–(6) in determining what weight to give the opinion. Those factors include: length of the treatment relationship and the frequency of examination; nature and extent of the treatment relationship; supportability; consistency; specialization; and other relevant factors. The regulations specify that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." Id. § 404.1527(c)(2). This requirement assists an appellate court's review of the Commissioner's decision and allows the claimant to understand the outcome of their case. Halloran, 362 F.3d at 33. The Second Circuit "do[es] not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion." Id.

The ALJ considered the opinions of plaintiff's treating physician Dr. Kyobe and found that they were inconsistent with the medical evidence and also internally inconsistent. The ALJ afforded "some weight" to a portion of Dr. Kyobe's opinion and "no weight" to other portions. The ALJ afforded "no weight" to the part of the November 3, 2009 opinion which found plaintiff very limited in terms of standing because it is inconsistent with Dr. Kyobe's own opinion finding no limitation with regard to walking in the same assessment on the same date. Moreover, the ALJ found this is also inconsistent with the medical evidence. The ALJ afforded "no weight" to the May 2, 2011 assessment and explained that it is also internally inconsistent because Dr. Kyobe opined that plaintiff could walk for two hours at one time without interruption, but found that he could only stand or walk for one hour in an eight hour workday.

Applying these regulations and principles, it is clear that the ALJ considered the

- 10 -

treating physician's opinion and explained the inconsistencies within Dr. Kyobe's opinions as well as with the record as a whole. Neither of Dr. Kyobe's opinions on the standing and walking points above are supported by medical findings. While Dr. Kyobe's findings regarding plaintiff's use of and necessity of a cane are consistent with the record, that does not change the finding that his opinions are internally inconsistent. Likewise, the ALJ was free to accord Dr. Kyobe's opinions limited weight even though the exertional limitations he identified were consistent with the record and were well-supported by medically acceptable clinical and laboratory diagnostic techniques. The ALJ weighed the opinions of Dr. Kyobe and Dr. Ganesh and had the authority to choose between them. See e.g., Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

After carefully considering the entire record and the ALJ's opinion, it is evident that the ALJ properly applied the substance of the treating physician rule and gave sufficient reasons for not affording Dr. Kyobe's opinion controlling weight.

### b. **Duty to Develop the Record**

Plaintiff contends the ALJ had a duty to recontact Nurse Practitioner Zumpano for a function-by-function assessment of plaintiff's limitations and he failed to develop the record when he did not do so. According to plaintiff, Nurse Practitioner Zumpano, who assists Dr. Kyobe with plaintiff's care, opined on August 5, 2010 that plaintiff remains disabled.

The Commissioner is required to create a complete medical record before making a disability determination. 20 C.F.R. § 416.912(d)–(f). Accordingly, and because such determinations are investigatory rather than adversarial, an ALJ has an affirmative duty to develop the record, even in the case of a represented client. See e.g., Vincent v. Comm'r of Soc. Sec., 651 F.3d 299, 305 (2d Cir. 2011). "The duty of an ALJ to develop the record is

particularly important when obtaining information from a claimant's treating physician due to the treating physician provisions in the regulations." Dickson v. Astrue, No. 06–CV–511, 2008 WL 4287389, at *13 (N.D.N.Y. Sept. 17, 2008) (Mordue, C.J.) (internal quotations omitted).

While plaintiff is correct that the opinion of an "other source" provider such as a nurse practitioner may be entitled to some consideration, plaintiff identifies no authority for the proposition that the ALJ was required to recontact a provider who is not an acceptable medical source under the regulations. See 20 C.F.R. § 404.1513 (detailing "Acceptable medical sources" and "Other sources"). "Although the ALJ has an affirmative duty to develop the record, the ALJ is not required to obtain every conceivable piece of information; the Commissioner's conclusion will be sustained if the record contains sufficient evidence to sustain that conclusion under the applicable standard." Knight v. Astrue, No. 09–CV–525, 2012 WL 3996853, at *7 (Sept. 11, 2012) (Bianchini, M.J.) (citing Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir.1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.")).

Here, the administrative record totals 349 pages and includes voluminous treatment notes and records, medical source statements by a treating physician and a consultative examiner, and reports and notes from plaintiff's treating providers. Moreover, as noted above, Dr. Kyobe and Dr. Ganesh both opined as to plaintiff's functional limitations and thus there was no need to contact a non-acceptable medical source such as Nurse Practitioner Zumpano for an opinion of plaintiff's function-by-function limitations.

Accordingly, the ALJ satisfied his obligation to develop the record and there is no error

with regard to the his failure to ask Nurse Practitioner Zumpano to provide a function-by-function assessment.

### c. **Plaintiff's Credibility**

Spina maintains that the ALJ's assessment of his credibility is flawed because it measured his statements by their inconsistency with the ALJ's own RFC determination and not the entire record.

Although the ALJ is required to consider a claimant's reports of pain and other limitations when determining the RFC, he may use discretion when weighing the credibility of such subjective complaints. Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam). When evaluating a claimant's assertions of pain and other limitations, the ALJ must utilize a two-step approach as outlined in the regulations. Id.; 20 C.F.R. § 404.1529. First, the ALJ must determine whether, based on the objective medical evidence, a claimant's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." Id. § 404.1529(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. Id. At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and

restrictions due to his pain or other symptoms.  Id. § 404.1529(c)(3)(i)–(vii).

"It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984) (internal quotations and alteration omitted).  As long as the ALJ's decision to discredit the claimant's subjective complaints is supported by substantial evidence, that decision must be upheld.  Id.

The ALJ did not entirely discredit Spina's subjective complaints.  Instead, the ALJ concluded that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]."  R. at 22.  Although the ALJ pointed to the RFC, this was not the sole basis for the credibility determination.  Indeed, the ALJ provided a detailed explanation as to why plaintiff's complaints were not supported by the medical record and plaintiff's functional history.  See id.  For example, it was noted that although plaintiff alleged that he suffers from a learning disability, head injury, and heart problems, and has difficulty lifting, standing, walking, climbing stairs, kneeling, squatting, reaching, paying attention, seeing, and hearing, he "cares for all his own personal care needs, cooks simple meals, does house and yard work when he feels ok, does laundry, shops, pays bills, counts change, handles a savings account, uses a checkbook, plays video games, and socializes."  Id.

Further, the ALJ noted that plaintiff's treatment has been generally successfully in controlling his symptoms.  Moreover, there is evidence that Spina has not been wholly compliant in taking prescribed medications or following instructions, "which suggests that the symptoms may not have been as limiting as the claimant has alleged."  R. at 23.  For

example, he was strongly advised to quit smoking, but did not comply. He was also advised on multiple occasions to keep a headache journal and identify factors that trigger his migraines but did not comply.

The ALJ applied the appropriate legal standards in assessing plaintiff's credibility. Accordingly, the ALJ's decision to discredit plaintiff's subjective complaints is supported by substantial evidence and will not be disturbed.

In sum, the opinion of the consultative examiner, coupled with plaintiff's testimony, the objective medical evidence in the record, and some of the opinion of plaintiff's treating physician, constitute substantial evidence to support the RFC determination.

### 3. **Use of Medical-Vocational Guidelines**

Finally, Spina submits that because he suffers from significant nonexertional impairments,[4] the ALJ erred in relying on the Medical-Vocational Guidelines and should have instead obtained the testimony of a vocational expert before rendering a decision at Step Five.

However, "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986). Instead, a vocational expert must be used only where "a claimant's nonexertional impairments significantly diminish his ability to work—over and above any incapacity caused solely from exertional limitations—so that he is unable to perform the full range of employment indicated by the medical vocational guidelines." Id.

---

[4] Those nonexertional impairments include the need to avoid exposure to unprotected heights; moving mechanical parts; humidity and wetness; dust/odor/fumes/pulmonary irritants; extreme cold or heat; vibrations; and the need to avoid operating a motor vehicle.

The application of the Medical-Vocational Guidelines and the necessity for a vocational expert "must be determined on a case-by-case basis." Id. at 605. "If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate." Id. If, on the other hand, "a claimant's nonexertional impairments significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments." Id. (internal quotations omitted).

Spina's nonexertional impairments—such as the need to avoid exposure to unprotected heights; moving mechanical parts; humidity and wetness; dust/odor/fumes/pulmonary irritants; extreme cold or heat; vibrations; and the need to avoid operating a motor vehicle—do not significantly diminish his ability to work more than his exertional impairments do. Plaintiff's need to avoid these exposures has only a minimal impact on his ability to perform light work. See Berrios v. Colvin, No. 3:12-CV-970, 2013 WL 4647704, at *11 (N.D.N.Y. Aug. 29, 2013) (D'Agostino, J.); SSR 85-15, 1985 WL 56857, at *8 ("Where a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc."). Thus, the ALJ properly found that plaintiff's nonexertional limitations did not have a significant effect on the occupational base of unskilled light work, and properly applied the Medical-Vocational Guidelines.

In sum, Spina's nonexertional limitations are not over and above the limitations caused by his exertional impairments, and the Medical–Vocational Guidelines adequately capture his condition. Therefore, it was not error for the ALJ to rely on the

Medical–Vocational Guidelines and not produce a vocational expert.

## IV. CONCLUSION

The finding that plaintiff's migraines are nonsevere is supported by substantial evidence. Even if this finding was in error, the error would be harmless. Next, the RFC determination is supported by substantial evidence and plaintiff's arguments to the contrary are without merit. The ALJ's decision to accord no weight to some portions of Dr. Kyobe's opinion was also proper as it conflicted with portions of his own opinion and also was not supported by the record. Nor was it error not to recontact Nurse Practitioner Lauren Zumpano, a non-acceptable medical source under the regulations. Moreover, the ALJ was justified in discrediting plaintiff's subjective complaints of pain and limitations as they were inconsistent with the objective evidence. Finally, the determination that jobs exist in the national economy that Spina can perform despite his impairments is not flawed for failure to employ the opinion of a vocational expert. In sum, the ALJ's decision to deny Spina disability benefits is supported by substantial evidence.

Therefore, it is

ORDERED that

1. The Commissioner's decision denying plaintiff disability benefits is AFFIRMED; and

2. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

Dated: February 7, 2014
       Utica, New York.

United States District Judge